**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SEARS AUTHORIZED HOMETOWN STORES, LLC, *et al.*,[1]<br><br>*Debtors*. | Chapter 7<br><br>Case No. 22-11303<br>(Jointly Administered)<br><br>Hon. Brendan L. Shannon |
| SEARS AUTHORIZED HOMETOWN STORES, LLC, and SEARS HOMETOWN STORES, INC.,<br><br>*Plaintiffs*,<br><br>v.<br><br>TRANSFORM KM LLC, TRANSFORM SR ACCEPTANCE LLC, TRANSFORM SR HOLDINGS LLC, TRANSFORM SR HOLDING MANAGEMENT LLC, and TRANSFORM SR LLC,<br><br>*Defendants.* | Adv. No. 22-50510 (BLS) |
| JEOFFREY L. BURTCH, NOT INDIVIDUALLY BUT AS CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATES OF SEARS AUTHORIZED HOMETOWN STORES, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>ESL INVESTMENTS, INC., ESL PARTNERS, L.P., HOMETOWN MIDCO LLC, HOFFMAN TOPCO LLC, TRANSFORM HOLDCO LLC, | Adv. No. 24-50281 (BLS)<br><br>**Objection Deadline: October 21, 2026 at 4:00 p.m. ET**<br><br>**Hearing Date: October 28, 2026 at 11:30 a.m. ET** |

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are the following: Sears Authorized Hometown Stores, LLC (9641) ("SAHS"); and Sears Hometown Stores, Inc. (8358) ("SHS"). The Debtors' mailing address is 5500 Trillium Blvd. Suite 501, Hoffman Estates, IL 60192.

TRANSFORM MIDCO LLC, TRANSFORM SR ACCEPTANCE LLC, TRANSFORM SR LLC, TRANSFORM SR HOLDINGS LLC, TRANSFORM SR HOLDING MANAGEMENT LLC, TRANSFORM KM LLC, TRANSFORM SR BRANDS MANAGEMENT LLC, TRANSFORM SR BRANDS LLC, TRANSFORM HOLDINGS, INC., EDWARD S. LAMPERT, ELISSA ROBERTSON, HENRY BASRA and MAHAD RAFEEQ,

*Defendants*.

**TRUSTEE'S MOTION TO APPROVE SETTLEMENT OF CERTAIN ESTATE CAUSES OF ACTION**

Jeoffrey L. Burtch, the chapter 7 trustee (the "Trustee") for the estates (the "Estates") of the above-captioned debtors (the "Debtors"), by and through his undersigned counsel, hereby moves for entry of an order pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the United States Code (11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code")), (i) approving the settlement (the "Settlement") memorialized in the *Settlement Agreement* (the "Settlement Agreement," and all undefined terms herein having the meanings given them in the Settlement Agreement), a copy of which is attached hereto as Exhibit A, by and between the Trustee, the Transform Defendants,[2] the Individual Defendants,[3] and PNC Bank, N.A. ("PNC"); and (ii) authorizing the Trustee to take any and all actions as may be

[2] The "Transform Defendants" are ESL Investments, Inc., ESL Partners, L.P., Hometown Midco LLC, Hoffman Topco LLC, Transform Holdco LLC ("Transform Holdco"), Transform Midco LLC, Transform SR Acceptance LLC ("Transform SR Acceptance"), Transform SR LLC, Transform SR Holdings LLC ("Transform SR Holdings"), Transform SR Holding Management LLC ("Transform SR Holding Management"), Transform KM LLC ("Transform KM"), Transform SR Brands Management LLC, and Transform SR Brands LLC.

[3] The "Individual Defendants" are Edward S. Lampert, Elissa Robertson, Henry Basra and Mahad Rafeeq. The Individual Defendants and the Transform Defendants are collectively referred to herein as the "Defendants."

necessary and appropriate to implement the provisions of the Settlement Agreement. In support of the Motion, the Trustee respectfully states as follows:

**Jurisdiction**

1. The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Pursuant to Rule 9013-l(f) of the Bankruptcy Court's Local Rules, the Trustee consents to the entry of a final order with respect to this Motion if it is determined that the Bankruptcy Court lacks adjudicatory authority under Article III of the United States Constitution to enter such final order absent consent of the parties.

**Background**

A. The Debtors' Formation and Business

4. The Debtors were originally part of the family of entities under the common ownership of Sears Holdings ("Sears Holdings"). Unlike the traditional large Sears department stores, the Sears Hometown stores were smaller-format stores focused on home appliances. The Debtors operated primarily through a network of independently-owned "Dealers," who sold inventory on consignment and received commissions from the Debtors based on sales.

5. In 2012, Sears Holdings spun off Debtor SHS, together with its subsidiaries, including Debtor SAHS (the "Spinoff"). At the time of the Spinoff, to facilitate their transition to independently operating companies, the Debtors entered into two "Related-Party Agreements" with Sears Holdings – the "Merchandising Agreement" and the "Services Agreement." Under the Merchandising Agreement, the Debtors were permitted to purchase inventory for their stores from

Sears Holdings. Under the Services Agreement, Sears Holdings agreed to provide a panoply of back-office services to the Debtors.

6. In 2018, Sears Holdings commenced a chapter 11 bankruptcy case and sold substantially all of its operating assets to Transform Holdco. As part of the sale, Sears Holdings assumed and assigned the Related-Party Agreements to certain of the Transform Defendants. All of the Transform Defendants are owned or controlled, directly or indirectly, by one of the Individual Defendants, Edward S. Lampert.

7. In 2019, Transform Holdco and SHS entered into a merger agreement (the "Merger Agreement"), pursuant to which Transform Midco LLC purchased the outstanding shares of SHS not already owned by Lampert-related entities. Immediately after the close of the Merger, Mr. Lampert, though his affiliated entities, owned a majority of the equity interest in SHS..

8. On August 27, 2019, SHS and a third-party purchaser entered into an equity and asset purchase agreement for the sale of the Outlet segment (the "Outlet Sale"), which sale closed on October 23, 2019. Compl. ¶ 79. Immediately following the consummation of the Outlet Sale, pursuant to the terms of the Merger Agreement, Transform Merger Corporation merged with and into SHS, with SHS as the surviving corporation (the "Merger").

Compl. ¶ 79.

B. Transform and PNC Loans

9. After the Merger, PNC provided financing to the Debtors pursuant to that certain Revolving Credit and Security Agreement (as amended, modified and/or supplemented from time to time, the "Credit Agreement"), which provided the Debtors with an asset-based revolving loan credit facility (the "Credit Facility").

10. In January 2022, Transform SR Acceptance entered into a loan agreement dated January 26, 2022, pursuant to which Transform SR Acceptance provided a $5 million term loan to

the Debtors. Subsequently, the Debtors entered into an Amended and Restated Loan Agreement, dated July 20, 2022 (the "Transform Loan Agreement"), which increased the principal amount of the loan from Transform SR Acceptance to $15 million.

11. During the three-year period leading up to the Bankruptcy Cases, the Debtors posted net operating losses of $41 million (FY2020), $10 million (FY2021), and $18 million (FY2022).

C. Bankruptcy Cases

12. On December 12, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (the "Bankruptcy Cases").

13. On December 15, 2022, the Bankruptcy Court authorized the Debtors to use cash collateral pursuant to a series of interim orders [D.I. 47, 154] and a *Final Agreed Order (I) Authorizing Use of Cash Collateral; (II) Granting Adequate Protection; (III) Modifying Automatic Stay; and (IV) Granting Related Relief* [D.I. 155] (collectively, the "Cash Collateral Orders").

14. On February 22, 2023, the Bankruptcy Court entered orders converting the Bankruptcy Cases to chapter 7 of the Bankruptcy Code, effective as of that date. The Trustee was appointed as interim trustee for each Estate shortly after the Bankruptcy Court entered the conversion orders. The section 341 meeting of creditors was held and concluded on March 23, 2023 without a trustee being elected. Accordingly, the Trustee now serves pursuant to section 702(d) of the Bankruptcy Code.

D. Adversary Proceedings

15. The Trustee is a plaintiff and party in interest in two adversary proceedings currently pending before the Bankruptcy Court.

i. Inventory Adversary Proceeding

16. Prior to conversion of the Bankruptcy Cases, on December 20, 2022, the Debtors filed a complaint in the Bankruptcy Court against certain of the Transform Defendants: Transform KM LLC, Transform SR Acceptance, Transform SR Holdings, Transform SR Holding Management and Transform SR LLC, thereby commencing Adv. Pro. No. 22-50510 (the "Inventory Adversary Proceeding").

17. In the Inventory Adversary Proceeding, the Debtors alleged that the defendants had failed to turnover approx. $7.5 million in inventory under the Transform Loan Agreement. The Debtors further alleged that the defendants wrongfully reduced the Debtors' inventory level by approx. $3.8 million, including by transferring a portion of the inventory to third parties.

18. The defendants filed an answer in the Inventory Adversary Proceeding denying most of the Debtors' allegations. In addition, the defendants in the Inventory Adversary Proceeding allege that they made additional inventory available to the Debtors after the filing of the Inventory Adversary Proceeding and assert that no further inventory is owed to the Debtors under the Transform Loan Agreement.

19. The Inventory Adversary Proceeding remains pending.

20. Upon his appointment as Trustee, the Trustee became the representative of the Debtors' Estates and, in that capacity, is the proper plaintiff and party in interest in the Inventory Adversary Proceeding pursuant to section 323 of the Bankruptcy Code.

ii. Avoidance Adversary Proceeding

21. After conversion to chapter 7, the Trustee filed a 12-count complaint in the Bankruptcy Court against the Transform Defendants and the Individual Defendants, thereby commencing Adv. Pro. No. 24-50281 (the "Avoidance Adversary Proceeding," and together with the Inventory Adversary Proceeding, the "Adversary Proceedings").

22. In the Avoidance Adversary Proceeding, the Trustee seeks to avoid approximately $170 million in transfers that the Debtors made to certain of the Transform Defendants during the one-year period prior to the Petition Date. As set forth in the Complaint, the Trustee has alleged that the Transfers should be avoided and recovered as insider preferences pursuant to sections 547(b) and 550 of the Bankruptcy Code and section 1305(a) of Title 6 of the Delaware Code. Alternatively, the Trustee alleged that the transfers should be avoided and recovered as constructively fraudulent transfers pursuant to sections 548 and 550 of the Bankruptcy Code and section 1305(a) of Title 6 of the Delaware Code.

23. The Trustee is still reviewing and reconciling proofs of claim filed against the Estates. However, excluding the Defendants' claims, it appears that the unpaid unsecured claims outstanding against the Debtors total approximately $23 million (including PNC's $16.5 million deficiency claim). The Defendants have alleged that $23 million is the maximum amount that the Trustee could avoid and recover—even if the Trustee were successful in full on all avoidance claims.

24. In addition, the Trustee brought claims of alter ego and substantive consolidation against the Transform Defendants and claims for breach of fiduciary duty against the Individual Defendants, who are former directors, officers and/or persons in control of the Debtors. As set forth in the complaint, the Trustee has alleged that, once the Transform Defendants merged with the Debtors, the purpose for the Related-Party Agreements was over. Rather than terminate the agreements, however, the Trustee alleged that the Transform Defendants kept the agreements in place to extract hundreds of millions of dollars, provide a captive buyer for Transform's branded products, and create an off-balance sheet financing for its inventory purchases.

25. Since the filing of the complaint, the Trustee, the Defendants have entered into a series of stipulations, which the Bankruptcy Court has approved, agreeing to extend the Trustee's deadline to file an amended complaint and the defendants' respective deadlines to file a responsive pleading.

iii. Parties' Claims against the Estates

26. Pursuant to the Cash Collateral Orders, PNC asserts a prepetition claim with a current balance of approximately $16.5 million, as well as certain Senior Adequate Protection Liens and Adequate Protection Superpriority Claims against the Estates.

27. One of the Individual Defendants, Elissa Robertson, has filed a $20 million general unsecured claim against the Estates for director and officer indemnification and advancement.

28. Transform SR Acceptance has filed a secured claim against the Estates for $15,367,273.05 outstanding under the Transform Loan Agreement.

29. Transform SR LLC, Transform KM LLC, and Transform SR Holding Management filed a general unsecured claim against the Estates in the amount of $17,441,070.10 for unpaid goods and services provided under the Related-Party Agreements. In addition, certain Transform Defendants assert administrative claims against the Debtors' estates for unpaid post-petition goods and services. Specifically, Transform Midco LLC asserts a post-petition administrative claim against the Debtors in the amount of $1,166,878.80 under the Related Party Agreements, and Transform HoldCo LLC asserts a post-petition administrative claim against the Debtors in the amount of $15,372.74 for unpaid monthly lease and utility reimbursements. *See Notice of Filing of Schedule of Unpaid Post-Petition Debts and Schedule of Cash Receipts and Disbursements* (ECF No. 259-1).

E. The D&O Insurance Policies

30. Prior to the Petition Date, the Debtors' insurer (the "Insurer") issued certain liability insurance policies to Hoffman Topco LLC and Debtor SHS (the "Policies").

F. Settlement Negotiations and Mediation

31. Both before and after the filing of the Avoidance Adversary Proceeding, the Trustee exchanged informal discovery with the Transform Defendants and, over a course of approximately 20 months, engaged in settlement negotiations with the Transform Defendants, the Individual Defendants, PNC and the Insurer regarding the claims alleged in the Adversary Proceedings.

32. On October 28, 2025, the parties participated in a voluntary mediation with respect to the claims alleged in the Adversary Proceedings, with Claudia Z. Springer serving as mediator. Although the mediation did not immediately result in a settlement, the parties continued to exchange informal discovery and position statements and, subject to the Bankruptcy Court's approval, reached a settlement of the Adversary Proceedings and certain related claims as memorialized in the Settlement Agreement.

33. While the Trustee believes the Adversary Proceedings have merit, the Individual Defendants and the Transform Defendants have strongly contested the factual and legal bases for the Trustee's alter ego, substantive consolidation and breach of duty claims, asserted "subsequent new value" and "ordinary course of business" defenses (among others) to the preference counts, and asserted defenses to the fraudulent transfer claims including good faith and the provision of reasonably equivalent value in the form of goods and services.

34. In short, the Defendants emphatically deny any liability and have indicated that they are prepared to vigorously defend against the Adversary Proceedings.

35. In addition, as the D&O policy proceeds are limited, the Trustee also anticipates significant expense and difficulty in collecting any judgment from the Individual Defendants.

36. Complicating the Estates' ability to recover is the fact that PNC asserts a right to any recovery in the Adversary Proceedings based on its prepetition liens, as well as its Senior Adequate Protection Liens and Adequate Protection Superpriority Claims, which could significantly erode the amount of the Estates' recovery.

37. Taking all of the foregoing issues into consideration, the Trustee now seeks Bankruptcy Court approval of the Settlement Agreement.

G. The Proposed Settlement[4]

38. The Settlement Agreement provides for two Settlement Payments to the Estates totaling $4,750,000 to be made within 30 days of the Effective Date: (i) a payment of $2,500,000 from the Insurer on behalf of the Individual Defendants; and (ii) a payment of $2,250,000 from the Transform Defendants.

39. In addition, as part of the settlement, certain Transform Defendants have agreed to waive their administrative expense claims and reasonably cooperate with the Trustee in providing readily available information necessary for the Estates to prepare and file tax returns.

40. As noted above, PNC holds certain prepetition senior liens, Senior Adequate Protection Liens and Adequate Protection Superpriority Claims that, arguably, may encumber some or all of the proceeds of a settlement. Accordingly, within five days of the Estates' receipt of the Settlement Payments, the Trustee has agreed to pay fifty percent (50%) of those proceeds (or $2,375,000) to PNC (the "PNC Settlement Payment") in exchange for a release of all claims held or asserted by PNC against the Estates.

[4] The summary of the terms of the proposed settlement is subject in all respects to the actual terms set forth in the Settlement Agreement. The summary is provided merely for ease of reference, and the Trustee refers the Bankruptcy Court and all parties to the Settlement Agreement for its complete terms and conditions.

41. Subject to certain limitations and exceptions, the Settlement Agreement provides for dismissal of the Adversary Proceedings with prejudice and mutual releases of all parties' claims and causes of action related to the Debtors, their Estates, and the Adversary Proceeding, by, between and among the parties, as well as releases by PNC and the Estates of the insureds under the Policies.

42. The conditions precedent in the Settlement Agreement include entry of a final, nonappealable order by the Bankruptcy Court approving the settlement pursuant to Bankruptcy Rule 9019 and authorizing the Trustee to make the Trustee Payment.

## RELIEF REQUESTED

43. By and through this Motion, the Trustee seeks entry of an order, substantially in the form of the proposed order attached hereto, approving the Settlement Agreement and authorizing the Trustee to make the PNC Settlement Payment upon receipt of the Settlement Payments from the Defendants.

44. Bankruptcy Rule 9019 governs the approval of compromises and settlements, and provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement..." Fed. R. Bankr. P. 9019.

45. The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *see also Matter of Penn Central Transp. Co.*, 596 F.2d 1102, 1113 (3d Cir. 1979) ("In administrating reorganization proceedings in an economical and practical matter it will often be wise to arrange the settlement of claims . . . .") (internal citation marks and quotation marks omitted).

46. In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] [it]self of all facts necessary [to form] an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated, [and] estimate . . . the complexity, expense and likely duration of such litigation . . . all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Matter of Penn Central Transp. Co.*, 596 F.2d at 1114; *see also In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (describing the "ultimate inquiry to be whether the compromise is fair, reasonable, and in interest of the estate") (internal citations and quotation marks omitted).

47. The United States Court of Appeals for the Third Circuit has enumerated four factors that should be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Myers v. Martin* (*In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (*citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)); *accord In re Nutraquest, Inc.,* 434 F.3d 639, 644 (3d Cir. 2006).

48. In making its decision, the bankruptcy court should not substitute its judgment for that of the trustee. The court is not to decide the numerous questions of law or fact raised by the litigation, but rather should evaluate the issues to determine "whether the settlement fall[s] below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 22 (1983) (internal citations and quotations omitted); *see also In re World Health Alternatives, Inc.*, 344 B.R. at 296 (stating that "the court

does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the range of litigation possibilities") (internal quotation marks and citations omitted).

49. In passing upon the reasonableness of a proposed compromise, the Bankruptcy Court "may give weight to the opinions of the Trustee, the parties and their counsel in determining the reasonableness of the proposed settlement." *In re Bell & Beckwith*, 77 B.R. 606, 612 (Bankr. N.D. Ohio), *aff'd*, 87 B.R. 412 (N.D. Ohio 1987); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness . . . . If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other") (internal citations omitted)

50. The Settlement Agreement easily exceeds the "lowest point in the range of reasonableness," and each of the *Martin* factors strongly supports approval under Bankruptcy Rule 9019.

51. Although the Trustee believes the Estates have viable claims, success in the Adversary Proceedings is far from certain. The preference claims may be subject to ordinary course of business and new value defenses that could eliminate any recovery. The alter ego and substantive consolidation claims present difficult issues under Delaware law, which strongly favors respecting the corporate form,[5] and the Individual Defendants dispute the accuracy and sufficiency of the Trustee's breach of fiduciary duty allegations.

---

[5] Piercing the corporate veil based on the "alter ego" theory is a very high hurdle. *See, e.g., Wallace v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) ("persuading a Delaware court to pierce the veil is a difficult task").

52. Continued litigation would be costly, complex, and time-consuming. The alter ego claims would require extensive discovery into the relationship between and among the Transform Defendants and the Debtors, including substantial document review and depositions concerning events that occurred years ago. The clawback claims would likewise require analysis of thousands of transactions during the year preceding bankruptcy. And each of the Individual Defendants is expected to vigorously dispute the breach of fiduciary duty claims and the alleged factual basis for such claims. Even if the Trustee ultimately prevailed, litigation and potential appeals would likely delay creditor distributions for years.

53. By contrast, the Settlement Agreement provides a substantial and immediate recovery for the Estates, avoids significant litigation and collection risks, reduces administrative expenses, and serves the paramount interests of creditors. Approval will allow the Trustee to complete administration of the cases and make distributions without the delay, expense, and uncertainty of prolonged litigation.

54. The proposed PNC Settlement Payment represents a compromise of competing claims to a limited pool of funds. The Trustee and PNC share some similar claims against the Defendants, and PNC has competing claims to any recovery based on its alleged lien on the allegedly converted inventory and certain claims and causes of action and its administrative expense claims against the Estates. Rather than incur the substantial investments of time, money and effort regarding a contested allocation of the settlement proceeds, the Trustee and PNC made the entirely practical and cost-effective decision to divide the settlement proceeds equally. The Trustee has reasonably concluded that, based on the *Martin* factors and his reasonable business judgment, the division of the Settlement Payment as proposed herein is in the best interests of the estates and all parties in interest, and should be approved.

55. Based on the foregoing, the Trustee respectfully submits that the Settlement Agreement is fair and equitable, is well within the required range of reasonableness, and should be approved by the Bankruptcy Court as being in the best interests of the Estates and the Debtors' creditors.

56. Notice of this Motion has been given to: (a) counsel for the Debtors; (b) the United States Trustee; (c) counsel for the Transform Defendants, the Individual Defendants and PNC; (d) all creditors who filed proofs of claim against the Estates; and (e) all parties in interest having requested notice to date pursuant to Bankruptcy Rule 2002(a)(3) (collectively, the "Service Parties"). In light of the nature of the relief requested herein, the Trustee submits that no further notice need be given.

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court enter an order in the form attached hereto: (i) approving the Settlement Agreement; (ii) authorizing the Trustee to take any and all actions necessary or appropriate to implement the terms and provisions of the Settlement Agreement; and (iii) granting such other and further relief as is just and appropriate.

**COZEN O'CONNOR**

Dated: September 23, 2026

*/s/ Mark E. Felger*
Mark E. Felger (No. 3919)
Simon E. Fraser (No. 5335)
1201 N. Market Street, Suite 1001
Wilmington, DE 19801
(302) 295-2000
mfelger@cozen.com

*Counsel to Jeoffrey L. Burtch,*
*Chapter 7 Trustee*